T.C. Memo. 2001-269

UNITED STATES TAX COURT

AUSTIN L. MITCHELL AND REBECCA A. MITCHELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 413-00.                    Filed October 4, 2001.

<u>Edgar E. Lim</u>, for petitioner.

<u>Thomas C. Pliske</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes of $3,696 for 1995, $5,812 for
1996, and $7,436 for 1997; and accuracy-related penalties under
section 6662(a) of $739 for 1995, $1,162 for 1996, and $1,487 for
1997.

The issues for decision are:

1.  Whether petitioner Austin L. Mitchell operated his farm for profit in 1995, 1996, and 1997.  We hold that he did not.

2.  Whether petitioners converted their personal residence to rental property in 1995.  We hold that they did not.

3.  Whether petitioners are liable for accuracy-related penalties under section 6662(a) for negligence or substantial understatement of income tax for 1995, 1996, and 1997.  We hold that they are.

References to petitioner are to Austin L. Mitchell. References to Mrs. Mitchell are to petitioner Rebecca A. Mitchell.  Unless otherwise indicated, section references are to the Internal Revenue Code for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioners

Petitioners lived in Salem, Missouri, when they filed their petition.  Petitioner has been a certified public accountant since 1976 and is also a lawyer.  He practiced law and accounting during the years in issue.  Mrs. Mitchell is a teacher.

B.   Petitioner's Tree Planting Activity

   1.   The Mitchell Family Farm

Petitioner's family owned and operated a farm (the Mitchell farm) in the Salem area for more than 100 years.  They grew hay and raised cattle.  Petitioner grew up on the Mitchell farm.  As of about 1991, the Mitchell farm had been neglected for many years.  Mrs. Mitchell also grew up on a small farm.

Petitioner's brother-in-law, Glenn B. Harris (Harris), harvested hay on the Mitchell farm beginning about 1971 or 1972. Harris bought hay from petitioner's mother, Janet Mitchell, and she paid him for working on the Mitchell farm.  During the years in issue, Harris was an industrial arts teacher, and he farmed more than 200 acres of his own.

Petitioner's mother died in April 1992, and he inherited part of the Mitchell farm, including about 100 acres, a house, and farming equipment.  About 38 acres of that 100 acres is tillable bottom land, 35 to 40 acres is pasture, and the rest is timber.

During the years in issue, petitioner allowed Harris to graze his 20 to 30 head of cattle and to plant hay on the Mitchell farm.  Harris applied lime and fertilizer to the area of petitioner's land on which Harris grazed his cattle and planted hay.  Harris harvested the hay and sold it for profit or fed it to his cattle.  Harris also bushhogged and cleaned up around the

farm. Harris did not pay petitioner for permitting him to graze his cattle or grow hay on the farm during the years in issue, and petitioner did not pay Harris for his work on the farm.

Petitioner worked up to 40 hours a week in the evenings and weekends from mid-April to September each year to maintain the farm. He worked on the farm 750 to 2,000 hours per year during the years in issue. He maintained fence rows and creek areas, tore down a barn, bushhogged, cleared underbrush, filled ditches, and removed weeds. He planted about 1,000 trees a year, including ornamental and maple trees around the house and walnut and white oak trees on the hills. He performed all of the work on the farm himself except for the work done by Harris.

Petitioner believed that the timber from the walnut trees he planted will be harvestable in 30 years, timber from the white oak trees will be harvestable in 50 to 70 years, and the walnut trees will provide a cash crop about 5 years after planting. Petitioner did not own any livestock.

Petitioner enjoys living on the farm and the strenuous physical labor. Since 1995, he has not hunted on the farm and he has gone fishing on the farm twice. Mrs. Mitchell did not work on the farm during the years at issue.

2.  Petitioner's Business Records and Business Plan

Petitioner did not have a budget, a business plan, or a separate bank account for the farm. He did not take farming or

agriculture courses.  However, he attended farm community meetings, read farming magazines, and discussed farming issues with farmer clients, friends, and other farmers.

C.    Petitioners' Residence

In August 1978, petitioners bought a house at 502 North Hickory in Salem, Missouri.  Petitioner lived in that house until November 1991, and has lived in the house at the Mitchell farm since then.  Mrs. Mitchell and petitioners' two sons lived at 502 North Hickory until August 1995 when they moved to the house on the farm.

In November or December 1995, petitioners agreed to let Toney E. Hill III (Hill), live at 502 North Hickory rent free. In exchange, Hill agreed to make improvements to the house and pay the utilities.

Hill did not pay all of the utilities.  As a result, the electric and water services were disconnected from June 12 to August 15, 1996.  Hill moved out in mid-1996.

Petitioners did not receive any rental income from 502 North Hickory in 1995, 1996, or 1997, and they did not advertise 502 North Hickory for rent or sale during those years.  They included it in one of their homeowner's insurance policies until August 6, 1997, when they sold 502 North Hickory.

D.   Petitioner's Law and Accounting Practice

During the years in issue, petitioner worked 2,600 to 2,900 hours per year in his office on his legal and accounting practices.  He worked 1,600 to 1,900 of those hours from October to April.  He worked many additional hours outside of the office doing legal research and reading professional publications. Petitioner represents clients before the Internal Revenue Service in his law and accounting practices and is familiar with section 183 and its regulations.

Petitioner does not have a separate checking account for his law practice.

E.   Petitioners' Tax Returns

Petitioners reported on Schedules F, Profit or Loss From Farming, attached to their tax returns for 1995, 1996, and 1997, that they operated a livestock/hay farm.  Petitioners reported the following amounts of nonfarm income on their income tax returns filed for 1995, 1996, and 1997:

| Year | Wages | Schedule C Income | Nonfarm Income |
|------|-------|-------------------|----------------|
| 1995 | $47,450 | $12,132 | $69,704 |
| 1996 | 50,914 | 7,745 | 69,258 |
| 1997 | 54,010 | 5,908 | 71,050 |

Petitioners reported the following amounts of income, expenses, and losses from their farm on their tax returns for 1995, 1996, and 1997:

| Year | Income | Expenses | (Loss) |
|------|--------|----------|--------|
| 1995 | -0- | $8,818 | ($8,818) |
| 1996 | -0- | 7,468 | (7,468) |
| 1997 | -0- | 9,012 | (9,012) |

Petitioners listed 502 North Hickory as rental property on Schedules E, Supplemental Income, of their 1996 and 1997 returns but not their 1995 return. They reported on the Form 4797, Sales of Business Property, attached to their 1997 return that they placed in service on July 1, 1994, a residential rental property having a basis of $74,861, reduced by depreciation of $6,728, and sold it in 1997 for $60,000, producing a $14,186 loss.

Petitioner prepared petitioners' returns for 1995, 1996, and 1997.

F. Examination of Petitioners' Returns

The examination in this case began after July 22, 1998.

OPINION

A. Burden of Proof on the Farm Loss and Rental Property Issues

We first consider who bears the burden of proof on the farm loss and rental property issues. Under section 7491, the burden of proof is placed on the Secretary in any court proceeding if the taxpayer: (1) Has complied with substantiation requirements under the Internal Revenue Code; (2) has maintained all records

required by the Internal Revenue Code and has cooperated with all reasonable requests by the Secretary for information, documents, meetings, etc.; and (3) introduces, in a court proceeding, credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed under subtitle A or B. Sec. 7491(a)(1) and (2).[1] Respondent contends that petitioners do not meet the requirements of section 7491(a). Petitioners do not contend otherwise. We treat this as petitioners' concession that they bear the burden of proof on the farm loss and rental property issues.[2]

B.    Whether Petitioner Operated His Farm for Profit

The first issue for decision is whether petitioner operated the farm for profit in 1995, 1996, and 1997. A taxpayer conducts an activity for profit if he or she does so with an actual and honest profit objective. Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). In deciding whether petitioner operated the farm for profit, we consider the following nine nonexclusive factors:  (1) The manner

---

[1]  Sec. 7491 applies to court proceedings arising in connection with examinations beginning after July 22, 1998. See Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 685, 726. The examination in this case began after July 22, 1998.

[2]  We discuss the burden of production and burden of proof for the penalties below at par. E.

in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved.  Sec. 1.183-2(b), Income Tax Regs.  No single factor controls.  Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); sec. 1.183-2(b), Income Tax Regs.

C.    Application of the Factors

1.    Manner in Which the Taxpayer Conducts the Activity

Maintaining complete and accurate books and records, conducting the activity in a manner substantially similar to that of comparable businesses which are profitable, and making changes in operations to adopt new techniques or abandon unprofitable methods suggest that a taxpayer conducted an activity for profit. Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

Petitioners contend that petitioner operated the farm in a businesslike manner.  Petitioners also contend that petitioner

decided to forgo income from haying or pasture rental in an attempt to reduce the farm's operating costs and that petitioner's attempt to reduce cash losses shows that he had a profit motive, citing Nickerson v. Commissioner, 700 F.2d 402 (7th Cir. 1983), revg. T.C. Memo. 1981-321. We disagree. Although he listed the activity as a livestock/hay operation on his 1995, 1996, and 1997 Schedules E, petitioner produced no hay or livestock and made no attempt to derive income from hay or livestock during the years in issue. Further, there is no evidence that petitioner had a bona fide plan to ever make a profit from planting and growing trees. This factor favors respondent.

2. The Expertise of the Taxpayers or Their Advisers

Efforts to gain experience, a willingness to follow expert advice, and preparation for an activity by extensive study of its practices may indicate that a taxpayer has a profit objective. Sec. 1.183-2(b)(2), Income Tax Regs. A taxpayer's failure to obtain expertise in the economics of an activity indicates that he or she lacks a profit objective. Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), affg. T.C. Memo. 1985-523; Golanty v. Commissioner, 72 T.C. 411, 432 (1979).

Petitioner contends that he had the necessary expertise to operate a farm because he was born and raised on the Mitchell farm, he had extensive conversations with other farmers in the

area, and he had experience producing row crops, hay, and livestock. He points out that he worked closely with Harris, who operated his own farm and who worked on the Mitchell farm for more than 20 years.

We disagree. The record does not show that petitioner knew how to make a profit producing livestock, hay, or timber. He did not seek expert advice on how to operate his farm profitably. He discussed farming with his farmer clients and farmer neighbors, but there is no evidence that they gave advice to him about farming for profit. This factor favors respondent.

3.   The Taxpayer's Time and Effort

The fact that a taxpayer devotes much time and effort to conducting an activity may indicate that he or she has a profit objective. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner worked on the farm 750 to 2,000 hours per year during the years in issue. However, he did not explain how the work he performed there related to making a profit. This factor is neutral.

4.   Expectation That Property Used in the Activity Will Appreciate in Value

A taxpayer may intend to make an overall profit when appreciation in the value of assets used in the activity is anticipated. Sec. 1.183-2(b)(4), Income Tax Regs. There is an overall profit if net earnings and appreciation would exceed losses in prior years. Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967).

Petitioner contends that his work on the farm enhanced its productivity and value. Petitioner and Mrs. Mitchell testified that they believed that the farm is appreciating in value and that the trees petitioner planted and his other work had increased the value of the farm. Petitioners point out that an expectation that timber will appreciate in value may show that the taxpayer had a profit motive, citing Kurzet v. Commissioner, T.C. Memo. 1997-54. Petitioners did not estimate the amount of appreciation in their property. Harris testified that the farm was worth about $500 per acre in 1981 and about $1,000 per acre in 2000. If we use Harris's estimate, petitioner's farm appreciated about $50,000 ($500 times 100 acres) in 19 years (about $2,632 per year). Petitioners reported losses averaging $8,433 in the years in issue, which is more than three times Harris's estimate of the farm's average annual appreciation. We are not convinced that petitioner expected appreciation to exceed his losses. This factor favors respondent.

5. Taxpayer's Success in Other Similar Activities

The fact that a taxpayer previously operated similar activities profitably may show that the taxpayer has a profit objective. Sec. 1.183-2(b)(5), Income Tax Regs. Petitioner contends in his posttrial brief that he has spent most of his life farming or advising others about their farms.

The record does not show how petitioner was involved in his family's farm, that his efforts contributed to its success, or that he successfully engaged in any other activity similar to his farm. Statements in petitioner's brief regarding advice he may have given to others are not supported by the record. We do not base findings of fact on factual assertions first made in a posttrial brief. See Rule 143(b); United States v. Genser, 582 F.2d 292, 311 (3d Cir. 1978); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992); Viehweg v. Commissioner, 90 T.C. 1248, 1255 (1988). This factor favors respondent.

6. Taxpayer's History of Income or Losses

A history of substantial losses may indicate that the taxpayer did not conduct the activity for profit. Golanty v. Commissioner, supra at 427; sec. 1.183-2(b)(6), Income Tax Regs. Losses during the initial stage of an activity do not necessarily indicate that the activity was not conducted for profit. Engdahl v. Commissioner, 72 T.C. at 669; sec. 1.183-2(b)(6), Income Tax Regs.

Petitioner received no farm income and he incurred farm losses in 1995, 1996, and 1997. Petitioner contends that he expected to incur losses in those years because the farm had been neglected before he moved there in 1991. Even if he expected

losses for that reason, we believe he had no basis for a bona fide profit expectation because he had no sources of income from the farm. This factor favors respondent.

7. <u>Amount of Occasional Profits, If Any</u>

The amount of any occasional profits the taxpayer earned from the activity may show that the taxpayer had a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs. Petitioner received no revenues from the farm from 1992 to 1998. Petitioners concede that this factor favors respondent.

8. <u>Financial Status of the Taxpayer</u>

The receipt of a substantial amount of income from sources other than the activity, especially if the losses from the activity generate large tax benefits, may indicate that the taxpayer does not intend to conduct the activity for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Petitioners had nonfarm income of $69,704 in 1995, $69,258 in 1996, and $71,050 in 1997, and they claimed Schedule F losses of $8,818, $7,468, and $9,012, respectively. Petitioner testified credibly that he could not afford to lose money from the farm. Petitioners did not have a substantial amount of income against which to deduct their losses, and they did not enter the farming activity to produce losses to offset their income. See <u>Callahan v. Commissioner</u>, T.C. Memo. 1996-65, affd. 111 F.3d 892 (5th Cir. 1997); <u>Roberts v. Commissioner</u>, T.C. Memo. 1987-182 (taxpayers, who were not

wealthy, did not enter farming activity with intent to produce paper losses to offset nonfarm income).  This factor is neutral.

9.    Elements of Personal Pleasure

The presence of recreational or personal motives in conducting an activity may indicate that the taxpayer is not conducting the activity for profit.  Sec. 1.183-2(b)(9), Income Tax Regs.

Petitioner mended fences, cut underbrush, dug weeds, and planted trees.  Respondent contends that petitioner planted trees to beautify the farm.  Petitioners' residence is located on their farm, and they have not shown that their farm expenditures did not benefit their residence and their enjoyment of their property.  See Estate of Dickerson v. Commissioner, T.C. Memo. 1997-165 (Christmas tree farm activity not conducted for profit; trees provided personal pleasure because they were located near taxpayers' residence).

Petitioner enjoyed working on the farm.  This fact does not mean that he did not engage in the activity for profit.  The farm had no recreational facilities, and petitioner worked hard on the farm.  However, it is unclear how much of his work on the farm had any economic purpose.  This factor is neutral.

10.  Conclusion

We conclude that petitioner did not operate the farm for profit in 1995, 1996, and 1997 because he did nothing to generate

revenue during the years in issue and he had no credible plan for operating it profitably in the future.

D.   Whether Petitioners Can Deduct Expenses for Their Residence

A taxpayer may deduct losses incurred in any transaction entered into for profit.  Sec. 165(c)(2).  Similarly, a taxpayer may deduct ordinary and necessary expenses for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income.  Sec. 212.  However, a taxpayer may not deduct the loss on the sale of his or her personal residence or the expenses incurred in leasing the home (other than taxes and mortgage interest), sec. 165(a); Newton v. Commissioner, 57 T.C. 245, 248 (1971); Harris v. Commissioner, T.C. Memo. 1982-410, affd. on other issues 745 F.2d 378 (6th Cir. 1984); sec. 1.165-9(a), Income Tax Regs., unless the taxpayer converted the residence to an income-producing property, sec. 1.165-9(b), Income Tax Regs.

Petitioners contend that they converted their residence to rental property when Mrs. Mitchell moved out of the home in 1995, and that they may deduct rental expenses in 1996 and 1997 and a loss on the sale of the property in 1997.  We disagree.  There is no convincing evidence that petitioners converted 502 North Hickory to rental property.

In Newcombe v. Commissioner, 54 T.C. 1298, 1300-1301 (1970), we applied five factors in deciding whether a residence has been converted to rental or income-producing property. Citing Newcombe, petitioners contend that the facts that they did not occupy 502 North Hickory after August 1995, that 502 North Hickory had no recreational facilities, that petitioner had received inquiries to rent 502 North Hickory (which he rejected because he believed it needed to be renovated), and that petitioners sold 502 North Hickory to an individual who offered to buy it when he saw petitioner renovating it show that they converted the residence to rental property or property held for the production of income. We disagree.

We are not convinced that petitioners converted 502 North Hickory to rental property. Petitioners' arrangement with Hill shows that petitioners intended to fix up 502 North Hickory but not that they intended to rent it out when the repairs were complete. If Hill had repaired the house, petitioners could have lived in, rented, or sold it. Petitioners did not try to rent 502 North Hickory from mid-1996 when Hill moved out until they sold it in August 1997.

We conclude that petitioners did not convert their residence to income-producing property before they sold it in 1997. Thus, they may not deduct depreciation or the operating expenses of the

residence under sections 162 and 167.  Similarly, they may not deduct their loss on the sale of the house under section 165.

E.  Whether Petitioners Are Liable for Accuracy-Related Penalties for Negligence or Substantial Understatement of Income Tax

1.  Background

We next decide whether petitioners are liable for the accuracy-related penalty under section 6662(a) for negligence or substantial understatement of income tax for 1995, 1996, and 1997.

Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment attributable to negligence or disregard of rules or regulations or to a substantial understatement of income tax.  Sec. 6662(a) and (b)(1) and (2). Negligence includes failure to make a reasonable attempt to comply with internal revenue laws or to exercise ordinary and reasonable care in preparing a tax return.  Sec. 6662(c).  An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).  An understatement is reduced to the extent that it is (1) based on substantial authority, (2) adequately disclosed on the return or in a statement attached to the return and there is a reasonable basis for the tax treatment of that item, or (3) due to reasonable cause and taxpayers acted in good

faith.  See secs. 6662(d)(2)(B)(i) and (ii), 6664(c)(1); sec. 1.6664-4(c), Income Tax Regs.

2.    Burden of Production and Burden of Proof

Section 7491(c) provides as follows:

    SEC. 7491(c).  Penalties.--Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.

The Commissioner must come forward with evidence that it is appropriate to apply a particular penalty against the taxpayer before the Court can impose the penalty; however, to meet the burden of production, the Commissioner need not introduce evidence relating to reasonable cause or substantial authority. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); S. Rept. 105-174, at 46 (1998), 1998-3 C.B. 537, 582.  Instead, the burden remains on the taxpayer to raise and prove that he or she is not liable for the penalty because of reasonable cause or substantial authority.  Higbee v. Commissioner, supra; see S. Rept. 105-174, supra at 46, 1998-3 C.B. at 582.

3.    Whether Petitioners Are Liable for the Accuracy-Related Penalty

Petitioner is an accountant and lawyer who is familiar with section 183 and the regulations.  Despite this, he deducted farm

losses[3] even though he had no credible plan to make a profit from the farm during or after the years in issue.  Petitioners did not act in good faith in claiming Schedule F farming losses, and their underpayments were not due to reasonable cause. Petitioners were negligent in deducting expenses and the loss on the sale of 502 North Hickory because they did not convert it to rental property.

Petitioners are liable for the accuracy-related penalty because they substantially understated their tax for 1995, 1996, and 1997, and they did not have substantial authority for their positions regarding the farm losses and the residence conversion.

We conclude that petitioners are liable for accuracy-related penalties under section 6662(a) for 1995, 1996, and 1997.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[3]  We previously decided by Summary Opinion that petitioner did not operate the farm for profit in 1992 or 1993.  Mitchell v. Commissioner (filed Oct. 8, 1998).  We do not consider petitioners' prior case in deciding whether petitioners were negligent because it is not clear that the decision in their earlier case was filed before they filed their 1997 return.