T.C. Memo. 2014-163

UNITED STATES TAX COURT

MICHAEL J. MCELROY AND RUTH M. MCELROY, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15253-11.                        Filed August 12, 2014.

Elissa F. Borges, Stuart M. Schabes, and Saul B. Abrams, for petitioners.[1]

William John Gregg, for respondent.

MEMORANDUM OPINION

NEGA, Judge:  This case is before the Court for decision without trial.  See

Rule 122(a).[2]  Respondent determined deficiencies of $53,423, $46,115, $47,851,

_____

[1]Upon his request, the Court allowed Mr. Abrams to withdraw from the case on November 13, 2013.

[2]Rule references are to the Tax Court Rules of Practice and Procedure.

(continued...)

[*2] and $20,447 in petitioners' Federal income tax for 1996, 1997, 1998, and 1999 (subject years), respectively. Following the parties' concessions, we decide primarily whether the three-year period of limitations under section 6501(a) bars assessment, as petitioners argue. We hold it does not. We decide secondarily whether section 165(a) and (c)(2) lets petitioners deduct losses claimed for 1996, 1997, and 1998. We hold it does not.

Background

I.    Preliminaries

The facts in this background section are drawn from the undisputed allegations in the pleadings, from the parties' stipulations, and from the exhibits submitted with the stipulations.

Petitioners are a married couple who resided in Virginia when their petition was filed. They filed joint Federal individual income tax returns (individual returns) for 1996, 1997, 1998, and 1999 on or before April 15, 1997, 1998, 1999, and 2000, respectively.

---

²(...continued)
Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended and in effect for the subject years.

**[\*3]** II.     The Partnerships

A.     Overview

Heritage Memorial Park Associates 1995-2 (HMPA 1995-2), Heritage Memorial Park Associates 1995-3 (HMPA 1995-3), and Heritage Memorial Park Associates 1995-4 (HMPA 1995-4) (collectively, partnerships) are Maryland general partnerships.  The partnerships were established to acquire cemetery sites, to hold the sites for over one year, and then to contribute the sites to qualified charitable organizations, with the aim to provide individuals who invested in the partnerships with charitable contribution deductions equal to the appraised values of the sites as of the times of the contributions.[3]  Glenn R. Johnston and his colleagues promoted the partnerships to wealthy individuals as a way for them to receive a return of tax benefits in the form of passthrough deductions or losses worth significantly more than the amounts invested.  Each partnership attracted (and always had) fewer than 100 partners.

---

[3]The amount of the deduction for a charitable contribution of property depends in relevant part on whether the contributed property was held for over one year (in which case the deduction is the property's fair market value) or for a lesser period (in which case the deduction is the taxpayer's basis in the property). See sec. 170(a), (e)(1)(A); sec. 1.170A-1(a), (c)(1), Income Tax Regs.; see also sec. 1222(3) (providing that property may qualify for long-term capital gain treatment only if held for over one year).

**[*4]** HMPA 1995-2, HMPA 1995-3, and HMPA 1995-4 each operated for one year (1996, 1997, and 1998, respectively). During or for the year of its operation, each partnership acquired cemetery sites at the total costs of $95,639, $169,167, and $252,373, respectively; contributed the sites to qualified charitable organizations; and reported that its partners (investors) could deduct charitable contributions aggregating $1,864,850, $2,936,700, and $5,282,050, respectively, representing the appraised values of the contributed sites. The partnerships did not hold the sites for over one year before contributing them to the charitable organizations, and the charitable contribution deductions were overstated in that they should have been measured by the partnerships' bases in (rather than the significantly higher appraised values of) the sites.

Michael J. McElroy (petitioner) invested $37,500 in each partnership. He made these investments to increase the amounts of his charitable contributions for the subject years and, more particularly, to receive promoted tax benefits worth significantly more than his investments. He expected that his investments would return him tax benefits worth $50,000 for each subject year.

[*5]  B.  HMPA 1995-2

HMPA 1995-2 timely filed a Form 1065, U.S. Partnership Return of Income, for 1996.  HMPA 1995-2 claimed the $1,864,850 charitable contribution deduction on that return.  Petitioner was allocated $135,127 of that deduction, and petitioners deducted the $135,127 on their 1996 individual return as a charitable contribution.  HMPA 1995-2 reported on its 1996 Form 1065 that HMPA 1995-2 had no income or expenses for 1996 (but for the charitable contribution deduction).  HMPA 1995-2 also reported on that return that one of its partners was Mr. Johnston and that his address and profits interest were as stated therein.

C.  HMPA 1995-3

HMPA 1995-3 timely filed a Form 1065 for 1997.  HMPA 1995-3 claimed the $2,936,700 charitable contribution deduction on that return.  Petitioner was allocated $143,899 of that deduction, and petitioners (after taking into account statutory limits on charitable contributions) deducted $121,888 of the $143,899 on their 1997 individual return as a charitable contribution.  HMPA 1995-3 reported on its 1997 Form 1065 that HMPA 1995-3 had no income or expense for 1997 (but for the charitable contribution deduction).  HMPA 1995-3 also reported on that return that one of its partners was Mr. Johnston and that his address and profits interest were as stated therein.

**[*6]**   D.   <u>HMPA 1995-4</u>

HMPA 1995-4 timely filed a Form 1065 for 1998.  HMPA 1995-4 claimed the $5,282,050 charitable contribution deduction on that return.  Petitioner was allocated $155,820 of that deduction, and petitioners (after taking into account statutory limits on charitable contributions) deducted $126,198 of the $155,820 on their 1998 individual return as a charitable contribution.  HMPA 1995-4 reported on its 1998 Form 1065 that HMPA 1995-4 had no income or expense for 1998 (but for the charitable contribution deduction).  HMPA 1995-4 also reported on that return that one of its partners was Mr. Johnston and that his address and profits interest were as stated therein.

III.   <u>Petitioners' 1999 Individual Return</u>

Petitioners deducted a charitable contribution deduction carryover of $51,633 on their 1999 individual return.  The parties stipulated that petitioners are not entitled to any of that carryover.

IV.   <u>IRS Audit and Criminal Investigation</u>

The Internal Revenue Service (IRS) commenced an audit which led to the mailing of the notices of final partnership administrative adjustment (FPAAs) discussed <u>infra</u>.  Later, on or about January 17, 1999, the Criminal Investigation

**[*7]** Division of the IRS began a criminal investigation as to Mr. Johnston and some or all of his colleagues.

On November 2, 1999, while both the audit and the criminal investigation were underway, respondent's revenue agent solicited from Mr. Johnston (as the tax matters partner (TMP) of HMPA-2) an extension of the period of limitations for assessment applicable to HMPA-2 for 1996. Approximately two weeks later, Mr. Johnston (through his counsel) notified respondent's revenue agent that he was then under criminal investigation and would not extend that period of limitations.

V.     Beginning of Partnership-Level Proceedings in This Court

On March 31, 2000, the Commissioner mailed an FPAA for 1996 to the TMP of HMPA 1995-2. On April 11, 2001, the Commissioner mailed an FPAA for 1997 to the TMP of HMPA 1995-3. On March 29, 2002, the Commissioner mailed an FPAA for 1998 to the TMP of HMPA 1995-4 (in care of Mr. Johnston).[4]

Mr. Johnston (in his stated capacity as the partnerships' TMP) petitioned the Court as to the FPAAs, on June 27, 2000, June 28, 2001, and June 25, 2002, respectively, and the resulting cases (partnership-level proceedings) were

---

[4]HMPA 1995-4's 1998 Form 1065 designated Mr. Johnston as the TMP for that year.

**[*8]** respectively placed on this Court's docket at Nos. 7176-00, 8260-01, and 10715-02.  Over the ensuing years, through September 24, 2008, respondent solicited and obtained Mr. Johnston's consent to the filing in this Court of a series of joint motions to continue any trial in the partnership-level proceedings.  The Court granted each motion.

VI.    Criminal Proceedings

On September 29, 2005, Mr. Johnston was indicted on (1) one count of conspiracy to defraud the United States by selling, claiming, and causing others to sell and claim millions of dollars in false and fraudulent tax deductions for charitable contributions and concealing from the IRS income from the sales of the fraudulent deductions and (2) multiple counts of aiding and assisting in the filing of false returns by investors in the partnerships so that the investors claimed charitable contribution deductions in amounts substantially greater than allowable.  These charges involved the partnerships, among one or more other entities.  Mr. Johnston pleaded guilty to the first count on April 12, 2007.

As to the above-referenced motions for continuance, many of them were filed before Mr. Johnston's indictment, many of them were filed after Mr. Johnston's indictment, and some of them were filed after Mr. Johnston's guilty plea.

**[*9]** VII.     Actions Concerning Partnerships' TMP

On June 27, 2008, respondent moved the Court to remove Mr. Johnston as the designated TMP in each of the partnership-level proceedings and to appoint a new TMP.  As of that time, Mr. Johnston was incarcerated pursuant to his guilty plea.  The Court granted that motion on February 3, 2009, and appointed petitioner as the partnerships' TMP solely for purposes of the partnership-level proceedings.  Petitioner thereinafter served in that capacity through April 6, 2012.  Petitioner ceased being the TMP because of petitioners' filing on August 16, 2010, of a voluntary petition for bankruptcy under chapter 7 of the Bankruptcy Code.[5]

VIII.  Culmination of the Partnership-Level Proceedings

Decisions were entered in the partnership-level proceedings on April 1, 2013.  Afterwards, petitioner's allocations of the charitable contribution deductions from the partnerships were revised to $6,999, $8,372, and $7,520, respectively.  The parties agree that those allocated amounts apply in this case.

IX.   Deficiency Notice

On March 31, 2011, respondent mailed to petitioners the deficiency notice underlying this proceeding.

---

[5]On December 1, 2010, the bankruptcy court issued an order granting petitioners a discharge under sec. 727 of the Bankruptcy Code.

**[*10]**                                    Discussion

## I.    Overview

Petitioners make two arguments in their opening brief as to the issues at hand.  We limit our analysis to those arguments.  See, e.g., Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003); Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001); Rybak v. Commissioner, 91 T.C. 524, 566 n.19 (1988). We bear in mind that issues and arguments not advanced on brief are considered abandoned or otherwise waived.  See Mendes v. Commissioner, 121 T.C. at 313-314; Nicklaus v. Commissioner, 117 T.C. at 120 n.4.

## II.    Period of Limitations

Petitioners argue primarily that the three-year period of limitations in section 6501(a) bars assessment of any deficiency redetermined in this case. Respondent acknowledges that the deficiency notice was mailed more than three years after petitioners' individual returns were filed but argues that the assessment periods remain open under exceptions that apply to tax attributable to "partnership items" within the meaning of the Tax Equity and Fiscal Responsibility Act of 1982

**[*11]** (TEFRA), Pub. L. No. 97-248, sec. 402(a), 96 Stat. at 648, and to partners

filing for bankruptcy.[6]  We agree with respondent.

Section 6501(a) generally requires that the Commissioner assess tax as to a

Federal income tax return within three years of the later of the return's due date or

its filing date.  See also sec. 6501(b)(1).  The three-year period may be extended,

however, for tax attributable to partnership items under TEFRA.  See sec. 6229;

see also BLAK Invs. v. Commissioner, 133 T.C. 431, 435-436 (2009); Rhone-

Poulenc Surfactants & Specialties, L.P. v. Commissioner, 114 T.C. 533 (2000).

The assessment period may be extended as to a deficiency attributable to a

partnership item, for example, if an FPAA is mailed to a TMP and an action is

begun under section 6226.[7]  See sec. 6229(d).  In that case, the running of the

---

[6]In this context, the term "partnership items" includes any item of income, gain, loss, deduction, or credit that the Secretary has determined is "more appropriately determined at the partnership level than at the partner level."  Sec. 6231(a)(3); see also sec. 301.6231(a)(3)-1(a), Proced. & Admin. Regs.  The term "partnership items" also includes the applicability of the period of limitations to the mailing of an FPAA.  See Weiner v. United States, 389 F.3d 152, 156-157 (5th Cir. 2004); Chimblo v. Commissioner, 177 F.3d 119, 125 (2d Cir. 1999), aff'g T.C. Memo. 1997-535; Kaplan v. United States, 133 F.3d 469, 473-474 (7th Cir. 1998); see also RJT Invs. X, LLC v. Commissioner, 491 F.3d 732, 735-738 (8th Cir. 2007).

[7]Sec. 6226(a) lets the TMP file a petition as to an FPAA within 90 days after its mailing.  Where the TMP does not timely file such a petition, sec. 6226(b)(1) lets any "notice partner" or "5-percent group" file a petition as to the FPAA within

(continued...)

**[*12]** three-year period of limitations is suspended during the partnership-level proceeding until at least one year after the decision entered in that proceeding becomes final. See sec. 6229(a), (d); see also Aufleger v. Commissioner, 99 T.C. 109, 111-114 (1992). The three-year period also may be extended if a partner is named as a debtor in a bankruptcy proceeding. Sec. 6229(f), (h). On this point, the partnership items of that partner which may be subject to the bankruptcy proceeding are recharacterized as nonpartnership items as of the day the bankruptcy petition is filed, and the Commissioner has at least one year thereafter to assess any additional tax attributable to the converted items. See secs. 6229(f)(1), 6231(b)(1)(D), (c)(1)(E); sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987).

Petitioners assert that the three-year limitations period in section 6501(a) has expired because a valid petition was never filed as to the FPAAs so as to begin an action under section 6226. They recognize that the partnerships each had a partnership-level proceeding docketed in this Court but contend the proceedings

---

[7](...continued)
60 days after the close of the TMP's 90-day period. See sec. 6231(a)(8) (defining the term "notice partner"); see also sec. 6231(a)(11) (defining the term "5-percent group"). Sec. 6226(b)(5) provides that a notice partner's or a 5-percent group's petition within the 90-day TMP period is considered filed on the last day of the referenced 60-day period if no action which is not dismissed is otherwise brought as to the FPAA within that 60-day period.

**[\*13]** were invalid because, they state, Mr. Johnston could not properly commence those proceedings in that he was under criminal investigation when the FPAAs were mailed and thus was disqualified from serving as the partnerships' TMP. They conclude that the petitions commencing those proceedings were invalid and that the deficiency notice was therefore untimely because it was mailed approximately 10 years after the FPAAs were mailed. They add that, even if the petitions were valid, the partnership-level proceedings should be deemed to have ended years before the day they actually did end because respondent knew that Mr. Johnston could not be the TMP. On this point, petitioners state, respondent should not have joined with Mr. Johnston in repeatedly moving the Court to continue a trial of the partnership-level proceedings or at least should have informed the Court that Mr. Johnston was not a proper TMP.

We are unpersuaded by petitioners' primary argument. A challenge to the validity of a petition filed as to an FPAA, as well as a challenge to the conduct of the proceeding resulting therefrom, is typically treated as an issue to be decided in that partnership-level proceeding. See, e.g., Wise Guys Holdings, LLC v. Commissioner, 140 T.C. 193 (2013); PCMG Trading Partners XX, L.P. v. Commissioner, 131 T.C. 206, 209-210 (2008); Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562 (1989). Neither party has specifically addressed

**[*14]** whether an exception to this treatment exists here, where the partnership items of petitioner were recharacterized as nonpartnership items during the pendency of the partnership-level proceedings. While petitioner was a party to those proceedings at their start, and in that capacity was then entitled to participate in the proceedings and to challenge whether the periods of limitations for the mailing of the FPAAs remained open, see sec. 6226(c), he ceased to be such a party after petitioners filed for bankruptcy, see sec. 6226(d)(1); see also sec. 6231(b)(1)(D), (c)(1)(E); sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., supra. In addition, after the bankruptcy filing, petitioner's partnership items arising during the subject years (which would generally have been decided at the partnership-level proceeding) were converted to nonpartnership items (subject to this deficiency proceeding). See sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., supra. Whether an exception to the usual treatment applies here given the recharacterization of petitioner's partnership items, however, we need not and do not decide. This is because, as we now discuss, petitioners would not prevail in either of the two scenarios.

Under the first scenario, we assume without deciding that petitioners' challenge to the validity of the petitions filed in the partnership-level proceedings, and petitioners' challenge to the conduct of those proceedings, were the proper

**[\*15]** subject of the partnership-level proceedings.  The Court in those proceedings did not find that the petitions were invalid, nor did we note any impropriety in the proceedings.  It follows in this scenario that, for purposes of this case, both the petitions and the conduct of the partnership-level proceedings are considered valid.

Under the second scenario, we assume without deciding that petitioners' challenge to the validity of the petitions filed in the partnership-level proceedings, and petitioners' challenge to the conduct of those proceedings, are proper subjects of this proceeding.  Contrary to petitioners' assertion, Mr. Johnston's filing of the petitions as to the FPAAs in his stated capacity as the partnerships' TMP suspended the periods of limitations as to the partnership items underlying the FPAAs until at least one year after our decisions in the partnership-level proceedings became final.  This is so regardless of the validity of the underlying petitions.[8]  See sec. 6229(d) (requiring only that a petition be filed under section

---

[8]We note in passing, however, that petitioners rely erroneously on Transpac Drilling Venture 1982-12 v. Commissioner, 147 F.3d 221 (2d Cir. 1998), rev'g and remanding T.C. Memo. 1994-26, to conclude that the single fact that the IRS was criminally investigating Mr. Johnston "automatically" disqualified him from serving as the partnerships' TMP.  The Court of Appeals for the Second Circuit subsequently clarified its holding in Transpac Drilling Venture 1982-12 to say completely the opposite of petitioners' conclusion.  The court stated: "Our decision in Transpac was based on the presence of an actual conflict.  We did not

(continued...)

**[\*16]** 6226 in order to suspend the period of limitations, with no mention to whether the petition must be valid); H.R. Conf. Rept. No. 105-220, at 679-680 (1997), 1997-4 C.B. (Vol. 2) 1457, 2149-2150 (specifically stating that the period of limitations is suspended notwithstanding whether a petition filed under section 6226 is valid or timely); see also O'Neill v. United States, 44 F.3d 803 (9th Cir. 1995).[9]  Not to mention that even if Mr. Johnston failed to qualify to act as the partnerships' TMP (which we need not and do not decide), he was at least a notice partner in that his name, address, and status as a partner were included in each of

_____

[8](...continued)
hold that the existence of a criminal investigation by the IRS automatically disqualifies a TMP or his representative from negotiating or entering into agreements with the IRS."  Madison Recycling Assocs. v. Commissioner, 295 F.3d 280, 288 (2d Cir. 2002), aff'g T.C. Memo. 2001-85; see also United States v. Martinez (In re Martinez), 564 F.3d 719 (5th Cir. 2009).

[9]In O'Neill v. United States, 44 F.3d 803, 805 (9th Cir. 1995), an individual who was the partnership's TMP filed a timely petition in this Court as to an FPAA mailed to the partnership, and the case was eventually settled on the basis that the partnership was entitled to a lesser loss than it claimed on its return.  The Court entered a decision reflecting the settlement but later learned that the individual had filed for bankruptcy before petitioning this Court, thus nullifying his status as TMP.  See id.  The Court vacated the stipulated decision for lack of jurisdiction, and some partners of the partnership then sought tax refunds, asserting that vacating of the decision made any related assessment untimely.  See id.  The Court of Appeals for the Ninth Circuit disagreed.  The court held that sec. 6229(d) tolled the applicable limitations period while the case was pending in this Court and for one year thereafter, notwithstanding that the individual's filing of the petition as the TMP was "defective".  See id. at 806.

[*17] the subject Form 1065.[10]  See secs. 6223(a), (b), and (c)(1), 6231(a)(8) (providing with respect to partnerships with no more than 100 partners that the term "notice partner" generally includes any partner whose name and address appear on the relevant partnership returns); see also Barbados #6 Ltd. v. Commissioner, 85 T.C. 900 (1985) (holding that the term "notice partner" generally includes any partner whose name and address appear on the relevant partnership returns).  Mr. Johnston, as a notice partner, could file the petitions to the extent he could not file the petitions as the TMP.[11]  See Barbados #6 Ltd. v. Commissioner, 85 T.C. 900.

We also decline to speculate (as petitioners ask us to do) that the partnership-level proceedings would have ended earlier than they actually did. The date of the decisions in the partnership-level proceedings is derived from the Code, see sec. 7459(c), and we lack the authority to change that date absent unusual circumstances, none of which are present here, see, e.g., Cinema '84 v.

---

[10]Petitioners have not argued that Mr. Johnston was no longer a notice partner when the petitions were filed, and we consider them to have waived any such argument.

[11]If Mr. Johnston qualified as a notice partner, petitions filed by him within the 90-day period described in sec. 6226(a) would have been treated as filed on the last day of the 60-day period described in sec. 6226(b)(1).  See sec. 6226(b)(5).

[*18] Commissioner, 122 T.C. 264, 267-268 (2004), aff'd, 412 F.3d 366 (2d Cir. 2005); see also sec. 7481 (regarding dates on which Tax Court decisions become final).

The long and short of this issue is that the 1996 through 1998 Forms 1065 were timely filed, the FPAAs were timely mailed to the partnerships' TMP within three years after the returns were filed, and petitions were timely filed in this Court as to the FPAAs. The assessment periods as to the partnership items therefore remained open at the commencement of and throughout the partnership-level proceedings, as stated in section 6229(d). Then, when petitioners filed their bankruptcy petition while the partnership-level proceedings were pending in this Court, petitioner's partnership items were recharacterized as nonpartnership items by operation of law, and respondent had at least one year thereafter to mail the deficiency notice to petitioners. See secs. 6229(f)(1), 6231(b)(1)(D), (c)(1)(E); sec. 301.6231(c)-7T(a), Temporary Proced. & Admin. Regs., supra. Respondent's mailing of the deficiency notice to petitioners met that one-year requirement. The deficiency notice was therefore timely, and the applicable limitations periods remain open.

**[*19]** III.     Section 165 Loss

Petitioners argue secondarily that they may deduct a $37,500 loss for each year as to petitioner's investments in the partnerships. To that end, petitioners assert, petitioner's ownership interests in the partnerships were worthless as of the end of the corresponding years in which the partnerships operated, and he knew that the interests were worthless as of those times and abandoned his interests as of those times. Petitioners add that petitioner invested in the partnerships to make a profit and in furtherance of a legislative intent to encourage charitable contributions. Respondent argues that petitioners may not deduct their claimed losses because petitioner did not invest in the partnerships to make a profit.

We agree with respondent that petitioners may not deduct their claimed losses. Deductions are a matter of legislative grace, and petitioners bear the burden of proving their entitlement to the deductions which they now claim. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). While section 7491(a)(1) sometimes shifts the burden of proof to the Commissioner with respect to disputed factual issues, section 7491(a)(1) has no bearing on this case because, as a threshold matter, petitioners have not raised the applicability of that section in their opening brief. See Mendes v. Commissioner, 121 T.C. at 312-313; Nicklaus v. Commissioner, 117 T.C. at 120 n.4; Rybak v. Commissioner, 91 T.C. at 566

**[\*20]** n.19; see also Dickerson v. Commissioner, T.C. Memo. 2012-60, 103 T.C.M. (CCH) 1280, 1283 (2012); Cameron v. Commissioner, T.C. Memo. 2007-260, 94 T.C.M. (CCH) 245, 247 n.3 (2007); Kansky v. Commissioner, T.C. Memo. 2007-40, 93 T.C.M (CCH) 921, 924 (2007); cf. Estate of Elkins v. Commissioner, 140 T.C. 86, 107 (2013) (noting that a taxpayer must raise the applicability of section 7491(a)(1) as an issue, for the section to be applicable).

Petitioners rely upon section 165(a) to support their claim to the loss deductions. That section lets a taxpayer deduct "any loss sustained during the taxable year and not compensated for by insurance or otherwise." Sec. 165(a). The applicability of section 165(a) here hinges on whether petitioner incurred the claimed losses in a transaction entered into for profit. See sec. 165(c)(2). Petitioners' meeting of that standard, in turn, requires that we find that petitioner's primary reason for investing in the partnerships was to make an economic profit, or in other words, a profit without consideration to any tax benefit flowing from the partnerships. See Fox v. Commissioner, 82 T.C. 1001, 1018-1027 (1984); see also Friedman v. Commissioner, 869 F.2d 785, 789-790 (4th Cir. 1989), aff'g Glass v. Commissioner, 87 T.C. 1087 (1986); cf. Surloff v. Commissioner, 81 T.C. 210, 233 (1983) (noting that an intent to make a profit for purposes of section 162 requires an intent to make an economic profit, independent of tax savings).

[*21] Petitioner invested in the partnerships to increase the amounts of his charitable contribution deductions for the subject years and, more particularly, to receive tax benefits greater than his cash investments. This reason for petitioner's investment fails to clear the requisite profit-motive hurdle that petitioners must jump over to deduct the claimed losses under section 165(c)(2). To be sure, the partnerships were designed to generate tax benefits from the making of charitable contributions and not to make any profit independent of tax benefits. In fact, the partnerships were established not to realize any income or economic profit at all. Therefore, we naturally conclude that petitioner could not make a "profit" from his investments in the partnerships as that term is defined without regard to the promoted tax benefits. See Howell v. Commissioner, 41 T.C. 13 (1963), aff'd, 332 F.2d 428 (3d Cir. 1964); see also Mitchell v. Commissioner, T.C. Memo. 2001-269, 82 T.C.M. (CCH) 732, 736 (2001); Semel v. Commissioner, T.C. Memo. 1965-232, 24 T.C.M. (CCH) 1176, 1184-1185 (1965).

We also disagree with petitioners' assertion that the profit motive requirement is met because Congress specifically prescribed a deduction for charitable contributions. The mere fact that Congress prescribed a deduction for charitable contributions does not necessarily mean that taxpayers such as petitioners are entitled to deduct any loss that they may incur incident to the

**[\*22]** making of a charitable contribution. See Marine v. Commissioner, 92 T.C. 958, 990-991 (1989), aff'd without published opinion, 921 F.2d 280 (9th Cir. 1991). Petitioners have received the benefit that Congress prescribed for the partnerships' making of the charitable contributions, and Congress has not allowed them to deduct anything more. Neither do we.

We conclude that petitioner lacked the requisite profit motive incident to his investment in the partnerships. Accordingly, we conclude that petitioners are not entitled to deduct their losses claimed for 1996, 1997, and 1998.[12]

IV. Conclusion

We hold that section 6501(a) does not bar assessment of the deficiencies for the subject years. We also hold that section 165(a) and (c)(2) does not let petitioners deduct their losses claimed for 1996, 1997, and 1998.

---

[12]Petitioners make no argument that they may deduct theft losses in the amounts of petitioner's unrecovered contributions to the partnerships. We therefore do not consider that issue. Nor need we decide petitioners' assertions that petitioner's partnership interests were worthless as of the end of the years of their operation or that he abandoned those interests as of the end of those years. Those assertions, which involve the timing but not the allowance of a loss deduction, fall to the side given our holding that petitioner lacked the requisite profit motive in investing in the partnerships.

**[*23]** We have considered all arguments that petitioners made, unless otherwise indicated, and have rejected those arguments not discussed herein as without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.